CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
FEB 15 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| DWAYNE TIMOTHY HASSETT, SR., | ) | CASE NO. 5:12CV00003 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's March 9, 2009 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated May 20, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since November 13, 2008, his alleged date of disability onset.[1] (R. 15.) The Law Judge pointed out that plaintiff had $13,301 in

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that

earnings in 2009 from his former employer which did not constitute substantial gainful activity. (R. 15, 162, 166.) In so finding, he relied on plaintiff's testimony that he had not worked since his disability onset date, as well as evidence submitted by James B. Chadduck, M.D. to the Virginia Retirement system indicating that these earnings likely were the result of left over vacation pay, sick pay, or private disability benefits. (R. 15, 479.) The Law Judge determined plaintiff's cervical spine tumor with weakness and headaches subsequent to surgical excision, obesity with obstructive sleep apnea, and depression were severe impairments.[2] (R. 15.) He found that plaintiff's history of kidney stones, hypertension, elevated cholesterol levels, chest wall contusion from a January 7, 2000 motor vehicle accident, and ingrown toenail with corrective surgery did not either singly or in combination have more than a minimal effect on his ability to function and, thus, were not severe impairments. (R. 16.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 16-17.)

Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work, with several limitations: 1) due to his right sided weakness, he must be able to rise from a seated position three or four times an hour in place for a brief period of time; 2) due to balance problems, he must avoid heights, steps, and hazardous machinery; 3) due to his sleep apnea, he should avoid exposure to environmental irritants and temperature extremes; 4) due to his right lower extremity weakness and numbness, he cannot perform tasks requiring the use of foot pedals; 5) due to right hand weakness, he can only occasionally handle and finger with his right hand, though he can frequently handle and finger

---

he became disabled prior to the expiration of his insured status, which is December 31, 2014. See 20 C.F.R. § 404.131(a); (R. 15, 178.)

[2] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

with his left hand; 6) due to his residual weakness and obesity, he can only occasionally squat, crawl, kneel and crouch; and 7) he is limited to unskilled or entry-level positions, though he can understand, remember, and carry out simple instructions notwithstanding the effects of his medications.[3] (R. 17-22.)

The Law Judge relied on portions of the testimony of James Ryan, PhD., a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 22-24, 70-76.) Based on this testimony, the Law Judge determined that plaintiff was incapable of performing his past relevant work. (R. 22.) The Law Judge determined that there were jobs that existed in significant numbers in the local and national economy which plaintiff could perform, specifically as a security worker, inspector, and charge account clerk. (R. 23.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 24.)

Plaintiff appealed the Law Judge's May 20, 2010 decision to the Appeals Council and submitted for review an August 3, 2010 psychological assessment by Joseph Cianciolo, PhD. (R. 1-9.) Though it acknowledged the assessment, the Appeals Council found that the information contained in the assessment referred to a period following the Law Judge's decision, thus concluding that it did "not affect the decision about whether you were disabled beginning on or before May 20, 2010." (R. 2.) The Appeals Council found no basis to review the Law Judge's decision, denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-3.) This action ensued, briefs were filed, and oral argument was held by telephone before the undersigned by telephone on January 28, 2013.

---

[3] Sedentary work is defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) as involving lifting no more than 10 pounds occasionally and less than 10 pounds frequently, standing or walking 2 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday.

3

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In the brief filed in support of his motion for summary judgment and in argument before the undersigned, plaintiff presented several challenges to the final decision of the Commissioner. First, he argues that the Law Judge and Appeals Council did not consider the combined effects of his exertional and non-exertional impairments. (Dkt. No. 9, at 2.) Specifically, he contends that the Commissioner did not consider the non-exertional limitations of fatigue, pain, lack of sleep, inability to concentrate, and side effects of medications. *Id.* Second, plaintiff argues that the Commissioner's final decision is not supported by the substantial medical evidence, including Dr. Cianciolo's psychological assessment submitted on administrative appeal. *Id.*

4

Third, he contends that the Law Judge "improperly relied on the testimony of the Vocational Expert, especially in light of the fact that the Vocational Expert's testimony in response to questions of [plaintiff's] counsel supports his claim for benefits."[4] *Id.* In oral argument before the undersigned, plaintiff's counsel argued that plaintiff met the requirements of Social Security Disability Listing of Impairments, Appendix 1, Sections 11.04B ("Listing 11.04B") and 11.08 ("Listing 11.08"). Plaintiff's counsel also contended that the Law Judge also did not consider the effects of plaintiff's obesity in relation to his other impairments, especially in light of his spinal impairments.[5] The undersigned will address each challenge below.

Listing §11.04B addresses central nervous system vascular accidents while Listing §11.08 addresses spinal cord or nerve root lesions due to any cause. *See* 20 CFR Pt. 404, Subpt. P, App. 1, 11.04B, 11.08. To meet either listing, plaintiff must demonstrate "significant and persistent disorganization of motor function in *two extremities*, resulting in sustained disturbance of gross and dexterous movements, or gait and station."[6] Id. at 11.04B (emphasis added). It is clear that the Law Judge did not explicitly consider Listing 11.08 in his analysis. However, he did consider Listing §11.04B which provides the same functional test, and he specifically

---

[4] The best the undersigned gets out of this argument is that plaintiff believes the substantial evidence shows he suffered the limitations offered in the broader hypothetical questions posed to the VE in response to which the VE opined no jobs would be available. (R. 74-76.)

[5] As said, plaintiff's counsel raised these two arguments for the first time at oral argument before the undersigned. Counsel for the Commissioner was given a chance to respond to these arguments and did so in a compelling and complete manner. Accordingly, the undersigned will consider these challenges in determining whether the final decision of the Commissioner is supported by substantial evidence.

[6] "Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms." 20 CFR Pt. 404, Subpt. P, App. 1, 11.00C.

5

referred to plaintiff's "benign excised spinal cord tumor." (R. 16.) Moreover, he found that plaintiff's physical impairments singly, or in combination, did not medically equal any listed impairment. (R. 16.)

There is no evidence that plaintiff suffered a "central nervous system vascular accident," more commonly known as a stroke, during the relevant period. Dr. Chadduck also expressed doubts that plaintiff's spinal tumor and surgery were the cause of his impairments on the right side of his body. (R. 690.) However, plaintiff's impairments still could medically equal a listed impairment if it were shown that he suffered reduced function in **both** his right upper and right lower extremities. *See* 20 C.F.R. § 404.1526. The Law Judge acknowledged plaintiff's limitations in the use of his right lower extremity, thus restricting plaintiff to sedentary work with numerous postural and other limitations resulting from numbness, weakness, and poor balance. (R. 17-18.) The Law Judge also restricted plaintiff to only occasional handling and fingering involving his right hand due to right hand weakness. (R. 18.) Despite these limitations, the Law Judge found that "plaintiff's obesity and excised benign spinal cord tumor have not been accompanied by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station meeting sections 11.04B and 11.05." (R. 16.)

The record is clear that plaintiff has limitations in his use of his right upper and right lower extremities. The records of James B. Chadduck, M.D. and other treatment providers document that plaintiff has significant problems with balance, weakness, numbness, and chronic pain in his right leg. (R. 254-255, 479, 503, 523, 688-690.) He has been described as "unsteady" on his feet, with some impairments in gait and walking and a positive Romberg sign. (R. 384, 392, 395, 489.) Dr. Chadduck also frequently recommended plaintiff for a spinal cord

6

stimulator to alleviate his chronic right leg pain. (R. 255, 682, 690.) Additionally, plaintiff testified that he also has limitations in the use of his right hand as a result of constant numbness. (R. 39-42.) Dr. Chadduck's records indicate that plaintiff does have paresthesias in two fingers of his right hand, intermittent weakness, some numbness, and limited dexterity. (R. 479, 689-690.) Physical examinations also have shown that plaintiff has reduced reflexes in his right extremities. (R. 515, 690.)

It is fair to say that plaintiff suffers some limitation in his lower right extremity though there is conflicting evidence in the record about its severity and persistent. Dr. Feeley found that plaintiff experienced persistent instability. (R. 542.) However, plaintiff consistently has demonstrated normal strength in his right leg, and he testified that he did not always need to use a cane. (R. 38, 392, 395, 515.) His lower extremity weakness also has been described as occasional, mild, or not present at all. (R. 489, 527, 688-689.) Christopher Newell, M.D.'s consultative examination observed that plaintiff demonstrated a slightly reduced range of motion, mild decreased strength, and loss of sensation in his right lower extremity, and that he walked slowly with a mildly ataxic gait, leading him to conclude that plaintiff was able to ambulate without an assistive device. (R. 526-528, 531-532.) Still, there is a good argument for finding that plaintiff has a significant and persistent limitation in his use of his right extremity, and the Law Judge found in his RFC determination that plaintiff was limited to sedentary work with several limitations regarding this impairment.

However, according to plaintiff's own testimony, the use of his right hand is less limited. He testified that he could still perform a wide range of tasks with his right hand, and physical examinations show slight reductions in strength and range of motion, at most. (R. 39-42, 392, 395, 526-528, 531-532, 689-690.) Dr. Chadduck also indicated that plaintiff's hand weakness

7

was only intermittent, and Dr. Newell found that plaintiff could open and close his right hand, do finger-thumb opposition, and occasionally could reach, handle, feel, grasp, and finger with his right upper extremity. (R. 527, 689.)

While the undersigned might have resolved this conflicting evidence differently, judicial review is not *de novo*. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). After a thorough review of the record, the undersigned finds that there is substantial evidence supporting the Law Judge's finding that plaintiff did not demonstrate significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station so as to meet the requirements of a listed impairment.

Plaintiff's next challenge is that the Law Judge and Appeals Council did not consider the combined effects of his exertional and non-exertional impairments. However, it is apparent to the undersigned that the Law Judge considered all exertional and non-exertional impairments, both singly and in combination before determining plaintiff's RFC. He certainly considered plaintiff's allegations that he suffered from fatigue and difficulty sleeping, and he extensively discussed plaintiff's claims of chronic and disabling pain. (R. 18-22.) The Law Judge also took into account plaintiff's difficulties with concentration as well as the side effects of his medication in determining plaintiff's RFC, leading him to limit plaintiff to unskilled or entry level tasks with the ability to "understand, remember and carry out simple instructions notwithstanding the effects of his medications." *Id.* Furthermore, contrary to plaintiff's assertions here, the record demonstrates that the Law Judge accounted for plaintiff's obesity in relation to his other impairments. (R. 16, 18.)

Plaintiff also challenges whether the Law Judge properly credited the medical evidence in the record, specifically the opinions of Drs. Freely, Chadduck and Cianciolo's. The record

8

indicates that plaintiff underwent surgery for a tumor in his cervical spine on November 13, 2008. (R. 364-366.) While follow-up MRIs indicated that the surgery had been a success, physical examinations revealed that plaintiff displayed progressive symptoms including numbness in his right leg and cramping in his hand, unsteady gait, proprioception deficits, headaches, and signs of progressive myelopathy. (R. 386-390, 391-392, 394-395.) However, there is substantial evidence supporting the Law Judge's finding that plaintiff was not as limited as he alleged. While Dr. Chadduck opined that plaintiff's condition was likely permanent with only a slight chance of improving, he stated only that plaintiff likely could not return to his past relevant work. (R. 254-256, 479.) The Law Judge heavily relied on Dr. Chadduck's findings, along with those of Dr. Newell, in his determination of plaintiff's RFC. (R. 17-18, 22.) The Law Judge's determination of where the weight of the evidence lies is supported by substantial evidence.

Furthermore, there is substantial evidence supporting the Law Judge's finding that the Dr. Feeley's opinion is inconsistent with the record. First of all, Dr. Feeley's treatment notes do not reveal disabling limitations. They indicate that plaintiff suffered from a mild adjustment disorder with mild anxiety, that he did reasonably well without medication for two weeks, that he exhibited generally baseline physical examination findings, and that he and all of his chronic problems were improving. (R. 429-430, 489, 678.) Though Feeley found that plaintiff had persistent instability, occasional lower extremity weakness, and limitations in his use of his upper extremities, he ultimately found that plaintiff's pain was doing better, stating "We have [plaintiff's] pain under control," and reduced his pain medication. (R. 489, 678.) These treatment records reasonably could be viewed as inconsistent with Dr. Feeley's medical opinion that plaintiff suffered from extreme pain, was extremely depressed, was precluded from

9

essentially all postural activities, and could only sit for 1-2 hours and stand for none. (R. 671-676.)

Furthermore, the other evidence of record supports the Law Judge's findings. Dr. Newell indicated that plaintiff's mood was dsyphoric, his gait mildly ataxic, and that he had slight reductions in strength, range of motion, and sensation on his right side. (R. 526-527.) His examination also revealed that plaintiff could occasionally use his right hand in all activities, could ambulate without an assistive device, and could perform sedentary labor. (R. 527.) Plaintiff's mood, affect, and attention were generally found to be normal. (R. 392, 395, 689.) Dr. Chadduck indicated that plaintiff's range of motion and strength were generally normal despite significant limitations. (R. 395, 689-690.) He also never opined that plaintiff was physical prevented from performing any gainful activity. Finally, the Law Judge reasonably relied on plaintiff's daily activities, conservative medical treatment following surgery, and minimal treatment for depression to conclude that plaintiff was not entirely credible concerning the severity and frequency of his symptoms. (R. 21.); SSR 96-7p (July 2, 1996). Accordingly, there is substantial evidence of record which supports the Law Judge's finding that plaintiff is capable of sedentary work with additional limitations and is not disabled.

Dr. Cianciolo's psychological assessment also was properly accorded no weight by the Appeals Council. For the assessment to have merited review by the Appeals Council, plaintiff must show that it was new, material, and relates back to the period before the Law Judge's decision. *Meyers v. Astrue*, 662 F.3d 700, 704-705 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 95-96 (4th Cir. 1991). Plaintiff has not demonstrated that this evidence satisfies the test. First, the assessment concerns plaintiff's current psychological status in August of 2010, three months after his hearing before the Law Judge, and represents an evaluation of whether plaintiff

10

demonstrated psychological factors which would have made him a candidate for a spinal cord stimulator. (R. 8-9.) Second, the findings generally are normal, revealing euthymic mood, intact memory, average intelligence, no unusual thought processes, and no history of inpatient or outpatient psychological intervention. (R. 9.) Accordingly, the undersigned finds that this evidence is not relevant, and the Council's decision not to review it was not erroneous.[7]

Plaintiff's also contends that the Law Judge did not properly consider the testimony of the VSE because he believes that the VE evidence supported his claim for benefits. Plaintiff relies on that portion of the vocational testimony where the VE was asked to assume that plaintiff's complaints regarding his condition were credible, to which he responded that there would be no jobs available in significant numbers in the national economy for such a person. (R. 75-79.) However, the Law Judge concluded that plaintiff's allegations were not entirely credible regarding the intensity, persistence, and limiting effects of his condition, which, if supported by substantial evidence renders the cited opinion irrelevant. The Law Judge is not obligated to accept the testimony of the VE concerning hypotheticals that are not supported by the record. *See Jones v. Barnhart*, 364 F.3d 501, 506 (3d Cir. 2004). The undersigned has found that the Law Judge's determination of plaintiff's credibility is supported by substantial evidence thus rendering plaintiff's argument unavailing.[8]

---

[7] At oral argument, plaintiff's counsel contended that this assessment supported the findings of Dr. Chadduck that plaintiff would need a spinal cord stimulator to alleviate his pain. He also alleged that the Law Judge did not consider this evidence. However, there are numerous references in the record to Dr. Chadduck's recommendation, and the Law Judge specifically considered it in his decision. (R. 19, 255, 682, 690.)

[8] Both plaintiff's counsel and counsel for the Commissioner raised the point that the Law Judge had referred to the VE's testimony as "inconsistent with the information contained within the Dictionary of Occupational Titles." (R. 23.) The Law Judge refers to the VE's testimony regarding a "sit/stand" option, which is not accounted for by the Dictionary of Occupational Titles ("DOT"). (R. 23.) Accordingly, this testimony is premised on the VE's experience rather than the DOT, which is a recognized purpose for taking vocational evidence. *See Jones v. Barnhart*, 364 F.3d 501, 506 fn 6 (3d Cir. 2004).

11

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
U.S. Magistrate Judge

Date: 2/15/13